IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREEN HILL,

*Plaintiff,*

v.

Civil Action No.: 1:11-cv-00910

ABERCROMBIE & FITCH, et al.,

*Defendants.*

**MEMORANDUM OPINION**

Kareen Hill, plaintiff, has filed suit against several defendants:  Abercrombie and Fitch ("A&F") and unnamed employees of A&F; General Growth Properties, Inc. ("GGP"); IPC International Corporation ("IPC"); Lieutenant Kenney ("Lt. Kenney"[1]), an employee of IPC; and an  unnamed employee of IPC.  *See* "Complaint For Civil Rights Violations, Invasion Of Privacy, Violation Of Maryland Declaration Of Rights, And Defamation" ("Complaint," ECF 1). The events undergirding the Complaint occurred on June 26, 2009, at a shopping mall known as the Towson Town Center (the "Mall"), located in Towson, Maryland, and began when an A&F employee notified the Mall's security that plaintiff "was likely stealing." *Id.* ¶¶ 14, 20.  Lt. Kenney, a security guard, along with another guard, responded to the A&F store and asked plaintiff to "leave the premises." *Id.* ¶ 20.  The guards then escorted plaintiff from the Mall. *Id.* ¶ 27.

Claiming that the incident was racially-motivated, plaintiff, an African American male, filed suit under 42 U.S.C. § 1981 ("Count I"). *Id.* ¶ 25-28.  Plaintiff has also brought claims

---

[1] Lieutenant Kenney's first name does not appear in the record.

against the defendants for "Intentional Infliction Of Emotional Distress" (Count II) and "Invasion Of Privacy- False Light" (Count III). *Id.* ¶¶ 29-31, 32-36. [2]

The defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with supporting memoranda. *See* "Motion To Dismiss Complaint Against Abercrombie & Fitch" ("A&F Motion," ECF 3) and "Defendant Abercrombie & Fitch's Memorandum Of Points And Authorities In Support Of Its Motion To Dismiss" ("A&F Memo," ECF 3-1); "Defendant, General Growth Properties, Inc.'s Motion To Dismiss Plaintiff's Complaint" ("GGP Motion," ECF 6) and "Defendant, General Growth Properties Inc.'s Memorandum Of Points And Authorities In Support Of Its Motion To Dismiss" ("GGP Memo," ECF 6-1); "Defendants, IPC International Corporation and Lt. Kenney's Motion to Dismiss Plaintiff's Complaint" ("IPC Motion," ECF 4) and "Defendants, IPC International Corporation and Lt. Kenney's, Memorandum Of Points And Authorities In Support Of Their Motion To Dismiss" ("IPC Memo," ECF 4-1).

Plaintiff has responded separately to the three motions. *See* "Plaintiff's Opposition To Defendant Abercrombie & Fitch's Motion To Dismiss" (ECF 7) and "Plaintiff's Memorandum Of Points And Authorities In Support Of Opposition To Defendant Abercrombie & Fitch's Motion To Dismiss" ("Opposition to A&F," ECF 7-1); "Plaintiff's Opposition To Defendant IPC International Corporation's and Lt. Kenney's Motion To Dismiss" (ECF 8) and "Plaintiff's

---

[2] Initially, plaintiff also filed a claim for Defamation (Count IV). Complaint ¶¶ 37-41. Defendants argued that the defamation claim was barred by the one-year statute of limitations applicable to defamation claims under Maryland law. *See* Md. Code (1974, 2006 Repl. Vol.), § 5-105 of the Courts and Judicial Proceedings Article. Thereafter, plaintiff voluntarily dismissed that claim.

Memorandum Of Points And Authorities In Support Of Opposition To Defendant IPC International Corporation's and Lt. Kenney's Motion To Dismiss" ("Opposition to IPC," ECF 8-1); "Plaintiff's Opposition To Defendant General Growth Properties, Inc.'s Motion To Dismiss" (ECF 9) and "Plaintiff's Memorandum Of Points And Authorities In Support Of Opposition To Defendant General Growth Properties, Inc.'s Motion To Dismiss" ("Opposition to GGP," ECF 9-1). The defendants have all filed replies. *See* "Defendant Abercrombie & Fitch's Reply to Plaintiff's Opposition To Motion To Dismiss" ("A&F Reply," ECF 10); "Defendants, IPC International Corporation And Lt. Kenney's Reply To Plaintiff's Opposition To Motion To Dismiss" ("IPC Reply," ECF 11); "Defendant General Growth Properties, Inc.'s Reply to Plaintiff's Opposition To Motion to Dismiss" ("GGP Reply," ECF 12).

As the matter has been fully briefed, the Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

### Factual and Procedural Background[3]

On June 26, 2009, plaintiff was shopping at the Mall, which is owned and operated by GGP. *See* Complaint ¶¶ 4, 10, 14. While at "Abercrombie Kids," a children's apparel store owned and operated by A&F, plaintiff wanted to see if the color of a particular pair of jeans matched the color of a pair of shoes he had already purchased at another store. *Id.* ¶¶ 12, 15, 16, 17. As the shoes were in a shopping bag, *id.* ¶ 16, plaintiff opened his bag "to do a color comparison." *Id.* ¶ 17. After speaking with an unnamed A&F employee, plaintiff realized that

---

[3] The Court construes the facts alleged in the Complaint in the light most favorable to plaintiff, as the party opposing the motions. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

he was in the children's store.  *Id.* ¶ 18.  Accordingly, he proceeded to Abercrombie & Fitch, an adult apparel store owned and operated by A&F, in an attempt to locate the "adult version of the same jeans."  *Id.*  There, he found the clothing of interest, and again opened his shopping bag to ascertain whether the color of the jeans matched the color of the shoes.  *Id.* ¶ 19.

An A&F store clerk apparently notified the Mall's security guards that there was a "suspicious person" at A&F, who "was likely stealing."  *Id.* ¶ 20.  Two security guards responded to the A&F store.  *Id.*  Both security guards were employees of IPC, a company hired by GGP to provide security at the Mall.  *Id.* ¶¶ 6-7.  The security guards asked plaintiff to "leave the premises."  *Id.* ¶ 20.  Lieutenant Kenney, one of the security guards, told plaintiff that, if he left immediately, "charges would not ensue."  *Id.*  Plaintiff requested a written report of the incident, which the guards declined to provide, allegedly because of their "malicious, illegal and discriminatory motivation" in removing plaintiff from the store.   *Id.* ¶ 21.  Plaintiff also informed the guards that he was an off-duty police officer and asked to speak with the Director of Security, Frank Wagner.  *Id.* ¶ 22.  Wagner later "acknowledged wrongdoing in the incident and offered to take Plaintiff to lunch."  *Id.* ¶ 23.

Plaintiff avers that, as he was escorted from the Mall, he was "an object of ridicule by the general public" and "encountered people he knew."  *Id.* ¶ 24.   As a result of the incident, plaintiff claims he suffered "humiliation, loss of self esteem, anxiety, embarrassment, emotional distress, and economic damages."  *Id.* ¶ 3.

## Discussion

## I.

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the Rule demands more than bald accusations or mere speculation. *Id.* Thus, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.*

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

However, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule

12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). To satisfy the minimal requirements of Rule 8(a)(2), however, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556. Thus, where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

## II.

### *Count I*

In Count I, plaintiff contends: "Defendants' actions thwarted and blocked Plaintiff's attempt to create a contractual relationship, specifically his attempt to purchase that pair of jeans which he had already located at the time of his refusal of sale and subsequent removal from the mall . . . .solely for the reason that the Plaintiff was an African American . . .." Complaint ¶¶ 26-27. That discriminatory interference with contract, plaintiff contends, violated 42 U.S.C. § 1981. According to plaintiff, he suffered damages as a result of the alleged civil rights violation, in the form of "great humiliation, shame, inconvenience and mental suffering." *Id.* ¶ 28.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, A&F contends that, as to plaintiff's § 1981 claim, plaintiff has not pled "'enough facts to state a claim to relief that is plausible on its face.'" *See* A&F Memo at 5 (quoting *Twombly,* 550 U.S. at 570). In particular, A&F asserts that plaintiff "has not alleged any *facts* showing that any of the defendants intended

6

to discriminate against him on the basis of race." *Id.* at 4 (emphasis in original). Rather, argues A&F, plaintiff has merely pleaded conclusory statements that defendants' actions were motivated by an intent to discriminate, which cannot suffice to sustain the § 1981 claim. *Id.* at 6. Further, A&F contends that plaintiff's claim is not plausible because "there is a much more likely explanation for his removal from the store; he was reasonably suspected of shoplifting." *Id.* at 2. A&F explains that, in light of plaintiff's "unusual" behavior of twice opening his shopping bag, "[i]t is much more likely that [defendants] were protecting their legitimate interest in preventing shoplifting, rather than lying to mask some sort of discriminatory conspiracy." *Id.* at 8. A&F asserts: "If after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a 'more likely' cause of the complained of behavior, the claim for relief is not plausible and should be dismissed." *Id.* at 7.

IPC and Lt. Kenney have incorporated by reference the grounds of A&F's motion. *See* IPC Memo at 3. Further, they argue that "Plaintiff has failed to allege any facts that IPC's employees or Lt. Kenney, individually, intended to discriminate against him on the basis of race" when they approached him as a suspected shoplifter and asked him to leave the premises under threat of arrest or charges. *Id.* at 5. Refering to the allegation in ¶ 27 of the Complaint, which states, "Such a refusal of a sale and subsequent removal from the mall was made solely for the reason that the Plaintiff was an African American and was made with malicious and discriminatory intent," IPC and Lt. Kenney maintain that the Complaint contains "only <u>one</u> bald allegation that addresses the issue of race." *Id.* (emphasis in original).

GGP, too, incorporated by reference the arguments advanced by A&F.  *See* GGP Memo at 4.[4]  In addition, GGP argues that "Plaintiff has failed to allege any facts that GGP's employees or agents were even involved in the alleged incident, much less that those employees intended to discriminate against Plaintiff on the basis of race."  *Id.* at 5.  In this regard, GGP points out: "Plaintiff's Complaint simply alleges that GGP is the owner of Towson Town Center and that GGP hired Defendant IPC to provide security."  GGP Reply at 2.  GGP adds that no arguments have been articulated by plaintiff to indicate that, "merely as the owner of the Towson Town Center, [GGP] can somehow be liable for the actions of IPC's or Abercrombie & Fitch's employees."  *Id.*

In response, plaintiff asserts that his factual allegations are sufficient to support an inference of racial discrimination and, by extension, his § 1981 claim.[5]  *See* Opposition to A&F at 4-5; Opposition to IPC at 4-5; Opposition to GGP at 4-5.  He points out that the security

---

[4] IPC, Lt. Kenney, and GGP are all represented by the same counsel.

[5] In his Opposition to the A&F Motion, plaintiff attempts to bolster the factual allegations in his Complaint.  Specifically, he alleges that Lt. Kenney and the other, unnamed guard searched his bag and found no stolen merchandise, and that they saw his badge and police identification.  *See* Opposition to A&F at 4.  These additional allegations will not be considered, as a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."  *Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997).  *See also Farwell v. Story*, No. 10–1274, 2011 WL 2359622, at *3 (D. Md. June 08, 2011); *Davis v. R & R Professional Recovery, Inc.*, No. 07-2772, 2009 WL 400627, at *4 (D. Md. Feb. 17, 2009); *Schafler v. Euro Motor Cars*, No. 08-2334, 2009 WL 277625, at *3 (D. Md. Feb. 05, 2009); *Ultrasound Imaging Corp. v. American Society of Breast Surgeons*, 358 F. Supp. 2d 475, 480 (D. Md. 2005); *In re Royal Ahold N.V. Securities & ERISA Litigation*, 351 F. Supp. 2d 334, 387 n. 44 (D. Md. 2004); *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 686 (D. Md. 2001).  However, even if these allegations were considered, they would not create the "reasonable inference that the Defendant's [sic] acted with malicious and discriminatory intent against an African-American male . . . ."  Opposition to A&F at 5.  The fact that there were no stolen items in plaintiff's bag would not necessarily establish that he did not attempt to steal or that his behavior was not, even if wholly innocent, at least so suspicious as to warrant the store clerk's call to security.  Further, that plaintiff is a police officer has no bearing. A police officer is not beyond suspicion merely because of his office.

guards escorted him from the Mall when they knew he was a police officer, they refused to give him a written report of the incident, and Wagner later acknowledged their wrongdoing.

Section 1981 of 42 U.S.C. grants all persons within the jurisdiction of the United States "the same right. . . to make and enforce contracts . . . as is enjoyed by white citizens." Courts generally apply a three-pronged test to analyze § 1981 claims that arise in a retail context. *Jarvis v. FedEx Office and Print Services, Inc.*, No. 08-1694, 2010 WL 1068127, at *7 (D. Md. Mar. 17, 2010). "[A] plaintiff must show: (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Id. See also Habash v. City of Salisbury, Md*., 618 F. Supp. 2d 434, 442 (D. Md. 2009); *Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 479-80 (D. Md. 2007); *Buchanan v. Consolidated Stores Corp*., 125 F. Supp. 2d 730, 734 (D. Md. 2001). "[A] plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).

As an African American, plaintiff is a member of a racial minority. Moreover, in the light most favorable to plaintiff, he was pursuing a contract with A&F, i.e., the purchase of clothing, which was clearly thwarted by his removal from the store. Yet, plaintiff has not alleged facts showing a causal link between his race and his removal, or that any of the defendants intended to discriminate against him because of his race, so as to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The only race-related allegation plaintiff makes with respect to Count I is that the "refusal of a sale and subsequent removal from the mall was made solely for the reason that the Plaintiff

9

was an African American and was made with malicious and discriminatory intent." Complaint ¶ 27. That contention is a "mere conclusory statement[]," of the kind that *Iqbal* rejected. 129 S. Ct. at 1940. That plaintiff is African American and the others are Caucasian does not, standing alone, constitute a factual basis showing intent to discriminate.[6] *See, e.g., Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races. . . . Instead, legally sufficient evidence is required. . .").

In particular, plaintiff has not alleged facts or inferences that the A&F employee identified plaintiff to security as a "suspicious person" because he is African American. Nor has plaintiff set forth any facts indicating that Lt. Kenney and the other security guard asked plaintiff to leave the store because he is African American. All of the allegations reflect that the disputed conduct was prompted by the belief that plaintiff's actions were consistent with attempted shoplifting.

Moreover, the guards' refusal to give plaintiff a written report of the incident is a red herring. In the absence of allegations that incident reports were commonly given to non-African American patrons suspected of shoplifting, it is probative of nothing. So, too, is Wagner's alleged acknowledgement of wrongdoing. Indeed, plaintiff does not aver that Wagner ever conceded that racial animus inspired the allegedly wrongful ejection of plaintiff from the Mall. Nor has plaintiff alleged any factual basis for imputing liability to GGP for any of the actions of the other defendants.

---

[6] Plaintiff never specifies the race or ethnicity of the persons with whom he interacted. But, in the light most favorable to him, I will assume that they are Caucasian.

*Jarvis v. Staples, Inc.*, No. 10-244, 2010 WL 4942010 (D. Md. Nov. 30, 2010), is instructive.  In that case, Jarvis, an African American male, brought a § 1981 claim against Staples, an office supplies store, alleging that Staples discriminated against him on the basis of race in the making and enforcement of a business contract, i.e., plaintiff's intended purchase of Staples products.  *Id.* at *1.  Jarvis claimed that, while browsing the aisles, searching for the supplies he needed, he noticed a Staples employee who was "watching and following him."  *Id.* After locating the supplies he needed, Jarvis realized he left his wallet in the car and left the store to retrieve it.  *Id.*  Upon his attempt to re-enter the store, the employee, who was also African American, refused to allow him to enter.  Jarvis then brought suit against Staples.  The court granted Staples' motion to dismiss, reasoning that the only evidence of racial discrimination that Jarvis had alleged was that he was watched and followed in the store, and not permitted to re-enter.  In the Court's view, "no race-based animus inheres in this allegation, since 'ordering Jarvis to leave the store does not, in and of itself, demonstrate racial animus,' and could not support even the slightest circumstantial inference thereof "  *Id.* at *3 (internal citation omitted). Although Jarvis claimed he was "profiled" as an African American male, the court held that the mere conclusory allegation of profiling did "not even remotely support a cause of action under § 1981. . .."  *Id.* at *4.

Plaintiff claims the case at bar is distinguishable from *Jarvis,* because plaintiff is a police officer; his accusers were not African American;[7] unlike Jarvis, he has no history of filing

---

[7] As noted, plaintiff never specifies the race of the persons with whom he interacted.  He merely states: "The facts of [*Jarvis*], however are clearly distinguishable from the instant case . . .. [T]he accuser in the *Jarvis* case that followed the Plaintiff was an African-American."

frivolous suits; and no Staples personnel ever acknowledged wrongdoing, in contrast to Mr. Wagner's concession.  Opposition to A&F at 5.

In my view, these are distinctions without a difference.  The store clerk would not have known that plaintiff was a police officer, and the security guards had no such knowledge until after they responded to the store and spoke to plaintiff.  In any event, plaintiff's employment as a police officer does not necessarily insulate him from suspicion, and the mere fact that some of the parties involved here are Caucasian does not automatically establish that they acted with racial animus.

It is true that Jarvis was rebuked for his history of filing frivolous suits, and there is no known history of frivolous suits filed by plaintiff.  But, that history was irrelevant to the court's holding in *Jarvis*, as the court stated: "Wholly apart from his problematic history with this Court, Jarvis's failure to plead sufficient factual evidence to support his conclusory legal allegations in this particular suit conclusively demonstrates that he is not entitled to relief."  *Jarvis*,  2010 WL 4942010, at *2.

Finally, although plaintiff alleges that Wagner acknowledged wrongdoing with respect to the incident, plaintiff does not allege that Wagner admitted or suggested that the incident was racially motivated.  *See Allen v. Montgomery Ward & Co.*, No. 1:98CV7, 1999 WL 33117435, at *2 (W.D.N.C. Mar. 03, 1999) (involving a § 1981 claim against retailer, claiming plaintiff was racially profiled as a shoplifter; in granting motion to dismiss, the court stated: "Absent any facts from which a reasonable jury could find that the [Defendant] would probably not have apprehended and accused the Plaintiff had she been white, and in the absence of any facts that

_____

Opposition to A&F at 5.  I will assume, however, that plaintiff's accusers were not African-American.

the [Defendant] had a policy of detaining or preferentially accusing African-Americans of shoplifting, the record does not support the required element of purposeful discrimination").

Similar to *Jarvis*, plaintiff has merely alleged that he is an African American male suspected of wrongdoing, who was asked to leave a retail establishment by persons who apparently are Caucasian. And, as in *Jarvis*, plaintiff has utterly failed to buttress his conclusory allegations with any facts that would support an inference of racial animus on the part of the store clerk, the security guards, or their employers.

Accordingly, as to Count I, plaintiff's Complaint is dismissed, without prejudice. Plaintiff shall be granted leave to amend.

## *Count II*

In Count II, alleging intentional infliction of emotional distress, plaintiff contends that defendants "intentionally caused severe emotional distress to the Plaintiff by way of their extreme, reckless and outrageous conduct, including but not limited to the false accusation of the Plaintiff, the removal of the Plaintiff from the mall, and escort of the Plaintiff from the mall grounds." Complaint ¶ 30. According to plaintiff, defendant's outrageous conduct caused him "great humiliation, shame, inconvenience and mental suffering." *Id.* ¶ 31.

Defendants urge dismissal of plaintiff's claim for intentional infliction of emotional distress. In particular, A&F contends that plaintiff has not alleged facts showing that the store clerk's conduct in reporting plaintiff as a suspected shoplifter was intentional, reckless, extreme, or outrageous. A&F Memo at 9, 11. A&F also contends that plaintiff has not alleged that he suffered emotional distress of such a severity as to justify relief. *Id.* at 12. A&F underscores that the "single statement" of its employee, to the effect that plaintiff was "a suspicious person" who

"was likely stealing,". . . would "not cause a reasonable person severe emotional distress . . . ." A&F Reply at 1.

Similarly, with respect to Count II, IPC and Lt. Kenney contend that plaintiff fails to allege that defendants "intentionally or recklessly engaged in conduct in an attempt to harm him," that their conduct rose "to the requisite level of outrageousness necessary for recovery," or that plaintiff's emotional distress rose to the requisite level of severity. IPC Memo at 7-8. GGP adds that plaintiff failed to allege "that GGP or its employees or agents were involved in the incident in anyway." GGP Memo at 8.

Plaintiff insists that he was targeted as suspicious by the store clerk, simply because he is African American, and that such conduct was extreme and outrageous. Opposition to A&F at 8. Further, he argues that it was extreme and outrageous for the security guards to escort him from the Mall after they were made aware that he was a police officer. *Id.* In response to GGP, plaintiff makes the bare assertion that the security guards acted "as agents of GGP." Opposition to GGP at 5.

With respect to tort claims, Maryland applies the principle of *lex loci delicti*, i.e., the law of the place where the alleged harm occurred. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 606 (D. Md. 2008); *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged harm occurred in Maryland, the Court will apply Maryland law with respect to plaintiff's tort claims. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (stating that the court "must apply the substantive law of the forum state including its choice of law rules)."

"Intentional infliction of emotional distress is a cognizable tort in Maryland." *Abrams v. City of Rockville,* 88 Md. App. 588, 597, 596 A.2d 116, 120 (1991). In order to establish a claim for the tort of intentional infliction of emotional distress under Maryland law, a plaintiff must show that: "(1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 465-66 (D. Md. 2002). *See also Crouch v. City of Hyattsville,* No. 09-2544, 2010 WL 3653345, at *7-8 (D. Md. Sept. 15, 2010); *Baltimore-Clark v. Kinko's, Inc.,* 270 F. Supp. 2d 695, 701 (D. Md. 2003); *Borchers v. Hrychuk,* 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999).

Of import here, claims for intentional infliction of emotional distress are disfavored and difficult to establish and, as such, are "rarely viable." *Farasat v. Paulikas,* 32 F. Supp. 2d 244, 247 (D. Md. 1997). *See Snyder v. Phelps,* 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring), *aff'd,* ____ U.S. ____, 131 S.Ct. 1207 (2011). As the Maryland Court of Appeals said in *Kentucky Fried Chicken National Management Co. v. Weathersby,* 326 Md. 663, 670, 607 A.2d 8, 11 (1992), the tort is used "only for opprobrious behavior" involving "truly outrageous conduct." Moreover, "[e]ach of [the] elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Serv. Admin.,* 78 Md. App. 151, 175, 552 A.2d 947, 959 (1989); *see also Arbabi,* 205 F. Supp. 2d at 466.

For conduct to be considered "intentional or reckless," a plaintiff "must allege and prove that the defendant either *desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from his conduct, or acted recklessly in deliberate

disregard *of a high degree of probability* that the emotional distress will follow" (emphasis in original). *Foor*, 78 Md. App. at 175, 552 A.2d at 959. *See also Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 312 (D. Md. 2002). Similarly, "[t]he 'extreme and outrageous' standard is quite high." *Respess v. Travelers Cas. & Sur. Co. of America*, 770 F. Supp. 2d 751, 758 (D. Md. 2011). In particular, the defendants' conduct must be "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Farasat,* 32 F. Supp. 2d at 247 (internal citation omitted). Put another way, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id.* at 248 (quoting *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 59-60, 502 A.2d 1057, 1064, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986)).

As to the requisite severity, a plaintiff must articulate facts showing that the emotional distress was "'so severe that no reasonable [person] could be expected to endure it.'" *Lauture v. St. Agnes Hosp.*, No. 08-943, 2009 WL 5166253, at *12 (D. Md. Dec. 29, 2009) (internal citation omitted). *See also Tackacs v. Fiore,* 473 F. Supp. 2d 647, 652 (D. Md. 2007) (stating that the emotional distress must be so severe as to have disrupted a plaintiff's "'ability to function on a daily basis'" (internal citation omitted)). Stated differently, the "balm" of recovery is to be "'reserved for those wounds that are truly severe and incapable of healing themselves.'" *Figueiredo-Torres v. Nickel,* 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (internal citation omitted).

Here, plaintiff merely posits the conclusory assertion that defendants "acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow."

Opposition to A&F at 7. Such a "bald accusation" has no probative value. *Twombly,* 550 U.S. at 555. Plaintiff has not alleged any facts that would support a conclusion that the disputed conduct was motivated by a desire to inflict severe emotional distress, or was done with knowledge that such distress would result, or with deliberate disregard of a high degree of probability that it would result. To the contrary, the facts as alleged suggest that the defendants acted out of a desire to prevent shoplifting.

Moreover, plaintiff has failed to allege conduct on the part of defendants that could be considered extreme and outrageous. An accusation of shoplifting, even without justification and made in front of other patrons, is not conduct "even approaching" the extreme and outrageous standard. *Shelton v. Safeway, Inc.*, No. 10–2358, 2011 WL 1869827, at *5 n. 6 (D. Md. May 16, 2011) (denying recovery for intentional infliction of emotional distress to plaintiffs who were loudly and erroneously accused of shoplifting at the supermarket in front of their families and other store patrons by a store guard who also grabbed one plaintiff's arm "with force" and attempted to lead her away to another room). *See also Hall v. Wal-Mart Stores East, Inc.,* No. 03-00056, 2003 WL 22757942, at *5 (W.D.Va. Nov. 21, 2003) (in suit seeking recovery for intentional infliction of emotional distress based on false accusation of shoplifting, the court held that "the conduct of the defendant's employees, although perhaps hasty, brash, and mistaken from the plaintiff's perspective, was not nearly so egregious or atrocious as to warrant an action for intentional infliction of emotional harm . . .."); *Pritchard v. Wal-Mart Stores, Inc.,* No. 99-0395-17, 2001 WL 418718 (D.S.C. May 26, 2000) (concluding that employee's conduct was not extreme or outrageous in erroneously accusing a patron of shoplifting and forcing her to lift her undergarments away from her body to prove she had not stolen items).

To be sure, having a security guard escort one off the premises is "very likely uncomfortable." *Lauture*, 2009 WL 5166253, at *12.  But, it does not rise to the "extreme and outrageous" standard. *Id.* (not extreme and outrageous conduct for an employer to have security guards escort plaintiff off the premises after she submitted her resignation). *Womack v. Tierco Maryland Inc.*, 38 Fed. Appx. 850 (4th Cir. 2002), provides guidance.

In *Womack, the* plaintiff was accused of having stolen a drink from a vendor at an amusement park. *Id.* at 853.  Although she denied the theft, she was handcuffed and escorted out of the park.  *Id.*  She alleged that the security guards threatened her, lifted her up by the handcuffs, and tightened the handcuffs to punish her. *Id.*  The Fourth Circuit agreed with the trial court's determination that the officers' conduct, even as alleged by plaintiff, "was not 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Id.* at 858 (internal citation omitted).

In this case, plaintiff does not allege that the store clerk loudly accused him of shoplifting, nor was plaintiff handcuffed or physically hurt, like the plaintiff in *Womack*.  The store clerk's notice to the security guards that plaintiff's behavior was "suspicious," coupled with the guards' directive that plaintiff leave the premises, and their decision to escort him from the Mall, was not conduct that, in and of itself, was extreme and outrageous within the meaning of the tort.[8]  Although plaintiff was threatened with arrest if he did not leave the store, that did not elevate the conduct to extreme and outrageous.

---

[8] Plaintiff also contends that he alleged extreme and outrageous behavior by claiming that the guards escorted him from the store after they ascertained that there were no stolen items in his bag and learned of his status as a police officer.  But, as discussed *supra*, note 5, plaintiff's

Finally, plaintiff has not alleged facts that would permit me to conclude that he suffered emotional distress at the requisite level of severity.  To be sure, plaintiff alleges that he suffered "great humiliation, shame, inconvenience and mental suffering," Complaint ¶ 31,  but that is not enough.  Plaintiff has not alleged any facts that would indicate he suffered emotional distress beyond that which an ordinary person could be expected to bear, and has alleged no facts about how the emotional distress he suffered affected his "ability to function on a daily basis," *Tackacs,* 473 F. Supp. 2d at 652 (internal quotation marks omitted).  *See, e.g., Kashaka v. Baltimore County, Maryland*, 450 F. Supp. 2d 610, 620 (D. Md. 2006) ("Plaintiffs claim only that they have suffered humiliation, loss of income, damage to their reputation, and familial tensions and frictions.  They do not offer any proof as to the nature, intensity, or duration of their trauma."); *Farasat,* 32 F.Supp.2d at 248 ("[P]laintiff has done no more than conclusorily allege that he suffered 'severe emotional distress' and 'mental anguish.' . . . There are no allegations in the amended complaint that plaintiff was ever treated by a physician for his mental anguish, that he was ever hospitalized because of a severely disabling emotional condition, that he lost sleep or weight, or that he was unable subsequently to live a normal life.").

In sum, plaintiff has failed adequately to allege that defendants' conduct was intentional or reckless, that their conduct was extreme and outrageous, or that he suffered emotional distress of a severity justifying relief.  Accordingly, plaintiff's Complaint is dismissed as to Count II, without prejudice.  Plaintiff shall be granted leave to amend.

### *Count III*

---

factual allegations about the search of his bag and his production of his police identification are not alleged in the Complaint.

In Count III, plaintiff contends that defendants are liable in tort for invasion of privacy by way of portraying him in a false light.  According to plaintiff, when the guards "detained the Plaintiff, accused the Plaintiff of committing a crime of moral turpitude and escorted the Plaintiff from the premises," all of which was observed by "people in the area," some of whom plaintiff knew, they created "the false impression that the Plaintiff was a criminal or had committed a crime."  Complaint ¶¶ 33-34.  Plaintiff avers that this conduct was "motivated by ill will, hatred, evil intent, and [was] otherwise malicious," and caused him to sustain damages in the form of "severe emotional distress, embarrassment, sleep deprivation, humiliation, and mental anguish, legal fees, emotional distress and loss of self-esteem."  *Id.* ¶¶ 35-36.

A&F urges dismissal of plaintiff's claim for invasion of privacy, because plaintiff cannot satisfy the "publicity" requirement of a false light claim.  According to A&F, "telling only two people about suspicions that a patron is possibly stealing cannot satisfy the publicity element of th[e] claim."  A&F Memo at 13.  Further, A&F observes that there is no allegation that it "exercises any control" over the other defendants, and thus it maintains that there is no basis for imputing liability to A&F.  *Id.* at 2.

IPC and Lt. Kenney also maintain that plaintiff fails adequately to allege the publicity element of the invasion of privacy claim, as plaintiff "does not allege that the public at large was made aware that he was accused of shoplifting or that anything was ever announced to any of the patrons as he was being escorted out of the mall."  IPC Memo at 8.  GGP underscores that plaintiff has not alleged facts showing that GGP played any role in any aspect of the incident. GGP Memo at 8-9.

Plaintiff contests the assertion that he has failed to adequately allege the publicity element.  And, in response to GGP, plaintiff again makes the bare assertion that the security guards acted "as agents of GGP."  Opposition to GGP at 7.

In order to establish a claim for false light invasion of privacy, plaintiff must show: "(1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff."  *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009).  *See also Bagwell v. Peninsula Regional Medical Center*, 106 Md. App. 470, 513-14, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996).  "[D]isclosure . . . must be sufficiently broad such that the fact becomes one of public knowledge. . . . Concomitantly, it is not an invasion of privacy to communicate a fact about someone's private life to a single person or even to a small group of people."  *Henderson,* 607 F. Supp. 2d at 733 (internal citations omitted).  *See also Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 431 (D. Md. 2005).  Failure to establish the element of publicity will cause the entire claim to fail.  *Henderson,* 607 F. Supp. 2d at 733.

Plaintiff has not set forth facts to establish that "the false impression that plaintiff was a criminal or had committed a crime" was communicated to the general public.  The store clerk's identification of plaintiff as "suspicious" was communicated only to the security guards, and thus fails to satisfy the publicity element.  As to the security guards, plaintiff attempts in his oppositions to bolster the factual allegations of  his Complaint with colorful language.  Instead of

the security guards "escort[ing]" him from the Mall, and plaintiff "encounter[ing] people he knew during the exit," as set forth in the Complaint, ¶¶ 34, 24, plaintiff alleges he was "paraded" through the Mall, in plain view of "many members of the community, including individuals whom the Plaintiff knew.  The only limit to the number of people who were given a harmful impression was the number of individuals in the Towson Town Center that day."  Opposition to A&F at 10-11.  Surely, plaintiff does not suggest that every "individual[] in Towson Town Center that day" witnessed plaintiff leaving the Mall with the security guards, or assumed he had "committed a crime of moral turpitude," particularly in light of the fact that plaintiff concedes that, during the encounter, he "did not act aggressively, unruly or combative," *id.* at 9-10, and he does not allege that he was handcuffed, nor that the security guards "broadcasted insults about [plaintiff] over a loudspeaker or even . . . insulted [plaintiff] in a voice loud enough to permit everyone in the store to hear." *Henderson,* 607 F. Supp. 2d at 733.  Plaintiff also does not allege that he was forcibly dragged out of the Mall, or that he was publicly accused of any crime at all, let alone within earshot of more than a handful of patrons.

Accordingly, plaintiff's Complaint is dismissed, without prejudice, as to Count III. Plaintiff shall be granted leave to amend.

## Conclusion

For the foregoing reasons, the Court will grant the defendants' motions to dismiss, without prejudice, and with leave to amend.  A separate Order follows.

Date: September 20, 2011                              /s/
                                                          Ellen Lipton Hollander
                                                          United States District Judge